IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

DALLAS BEARD,

    Petitioner,

vs.

WARDEN, FCI McDowell,

    Respondent.

Civil No. 1:22-cv-00407
Crim No. 1:12-cr-00212-TWP-TAB-1

FILED SEP 2 3 2022
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

COMES Petitioner, DALLAS BEARD ("Beard"), appearing *pro se,* and in support of this memorandum would show as follows:

### I. STATEMENT OF JURISDICTION

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 2241, which confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(a) and (c)(3). A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. A federal prisoner may also challenge the legality of his detention under § 2241 if he falls within the "savings clause" of § 2255(e). See *United States v. Surratt,* 797 F.3d 240 (4th Cir. 2015).

## II. STATEMENT OF THE GROUND FOR REVIEW

Whether, in light of *Wooden v. United States*, 141 S. Ct. 1370 (2021), Beard's prior conviction for multiple counts of burglary do not qualify him as an ACCA offender requiring resentencing without the ACCA enhancement.

## III. STATEMENT OF THE CASE

### A. Procedural Background

On December 19, 2012, a grand jury sitting in the United States District Court for the Southern District of Indiana, Indianapolis Division, returned a seven (7) Count Indictment charging Beard and 4 other co-defendants. See Doc. 47.[1] Count 1 charged Beard with Conspiracy to Possess with Intent to Distribute 50 Grams Or More of Methamphetamine (actual), in violation of 21 U.S.C. §§ 846 and 841(a)(1). *Id.* Counts 2, 5, and 6 charged Beard with Possession with Intent to Distribute 5 Grams or More of Methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1). *Id.* Count 4 charged Beard with Possession with Intent to Distribute 50 Grams Or More of Methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1). *Id.* Count 7 charged Beard with Felon in Possession of Firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). *Id.* The Indictment also contained a Forfeiture Allegations, pursuant to 21

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Eastern District of Kentucky, Covington Division in Criminal No. 2:15-cr-00015-DLB-REW-1, which is immediately followed by the Docket Entry Number.

U.S.C. § 853, 18 U.S.C. § 924, and 28 U.S.C. § 2462(c). *Id.*

On April 9, 2014, a Change of Plea Hearing was held and Beard entered a guilty plea as to Counts 1 and 7 of the Indictment, pursuant to a written Plea Agreement. See Docs. 212, 233.

On June 27, 2014, Beard was sentenced to a total term of 198 months' imprisonment, followed by 5 years of Supervised Release, $1,000 Fine, and a Mandatory Special Assessment Fee of $200. See Docs. 259, 261.

On July 7, 2014, Beard timely filed a Notice of Appeal. See Doc. 263.

On November 12, 2014, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") issued an Order dismissing Beard's appeal. See Doc. 286.

On May 19, 2017, Beard filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"), which was denied on August 15, 2017. See Docs. 339, 341.

**B.    Statement of the Relevant Facts**

   1.    Offense Conduct

In furtherance of said conspiracy and to effect the objects thereof, the defendants did commit, among others, the following overt acts:

> On or about July 19, 2012, Donald Akers ("Akers") telephonically arranged to deliver one ounce of methamphetamine to an undercover law enforcement officer ("UC") in exchange for $1,850 United States

3

currency. Akers, accompanied by Lynda Gaulden ("Gaulden"), then met with Beard, following which Akers delivered approximately one ounce (26.818 grams) of methamphetamine (23.06 grams actual) to the UC in exchange for approximately $1,750 United States currency, constituting official advanced funds ("OAF").

On or about July 24, 2012, Gaulden answered a telephone call placed by the UC to a telephone number previously utilized by Akers. Gaulden advised that Akers had been arrested and that she was taking care of business. In response to the UC's request to purchase two and one-half ounces of methamphetamine, Gaulden advised that she could provide the methamphetamine and that she had a number of things for sale including a firearm.

On or about July 25, 2012, as arranged via telephone and text messaging, the UC met Gaulden at a residence in Indianapolis, Indiana, to obtain two and one-half ounces of methamphetamine in exchange for $4,500, and a firearm in exchange for $100. In the residence, Gaulden, accompanied by her mother, Kathaleena Kaufman ("Kaufman"), obtained approximately two ounces (56.34 grams) of methamphetamine (54.79 grams actual) and a scale from Thornton Carroll ("Carroll"). The UC was given the methamphetamine provided by Carroll and approximately one-half ounce of purported methamphetamine provided by Gaulden, in exchange for approximately $4,400 OAF, a portion of which monies Gaulden handed to Carroll. Gaulden advised the UC that he should call her until Akers is released, and Kaufman advised that "we ran this before he even got here."

Also on July 25, 2012, Gaulden retrieved a .38 caliber Smith and Wesson firearm from a vehicle, which firearm she provided to the UC in exchange for approximately $100 OAF.

On or about August 21, 2012, Kaufman telephonically advised the UC to telephone and then come to the same Indianapolis residence as he had previously, in response to the UC's request to purchase one or two ounces or more of methamphetamine the following day.

On or about August 22, 2012, Kaufman met the UC at the residence as

arranged and advised that she had been in contact with her source, Beard. Later on that same date, Beard arrived at the residence and provided approximately two ounces (55.59 grams) of methamphetamine (54.757 grams actual) to the UC in exchange for $3,600 OAF. Beard then advised the UC to contact him through Kaufman and he would provide whatever amount of methamphetamine the UC needed.

On or before September 21, 2012, and in response to the telephonic request of the UC to purchase two to four or more ounces of methamphetamine, Beard advised that he would call the UC the following day to meet the UC.

On or about September 21, 2012, Beard met the UC in a parking lot and provided approximately one ounce (27.575 grams) of methamphetamine (27.018 grams actual) to the UC in exchange for $1,800 OAF. Beard advised that his supplier needed additional time to obtain another ounce of methamphetamine.

On or about November 1, 2012, as previously arranged through telephone and text messaging, Beard met the UC in another parking lot and provided approximately one ounce (27.5835 grams) of methamphetamine (25.37 grams actual) to the UC in exchange for $1,800 OAF.

See Doc. 47 at 2-4.

### 2. Plea Proceeding

On April 9, 2014, a Change of Plea Hearing was held before Judge Tanya Walton Pratt. See Doc. 259. Beard entered a guilty plea as to Counts 1 and 7 of the Indictment, pursuant to a written Plea Agreement. See Doc. 212. In exchange for Beard's guilty plea, the government agreed not to oppose a 3-level reduction for timely acceptance of responsibility pursuant to §§ 3E1.1(a) and (b). See Doc. 212. *Id.* The

case was referred to the Probation Office for the preparation of the PSR.

    3.    <u>Sentencing Proceeding</u>

On June 27, 2014, a Sentencing Hearing was held before Judge Tanya Walton Pratt. See Doc. 259. The Court sentenced Beard to 198 months on each of Counts 1 and 7, to be served concurrently, for a total term of 198 months imprisonment; followed by supervised release for a term of 5 years on each of Counts 1 and 7, to be served concurrently, for a total term of 5 years; and the Court ordered payment of $1,000 Fine and a Mandatory Special Assessment Fee of $200. See Doc. 261. A timely Notice of Appeal was filed on July 7, 2014. See Doc. 263. Beard's appeal was dismissed on November 12, 2014. See Doc. 286.

    4.    <u>Postconviction Proceeding</u>

On May 19, 2017, Beard filed a § 2255 Motion, challenging his guilty plea as involuntary because he was not aware that he could not be sentenced as a career offender. Further, to the extent that Beard can be understood to argue that the statute of limitations on his claims began to run when the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), that case was decided on June 26, 2015, and the Supreme Court made *Johnson* retroactive in *Welch v. United States*, 136 S.Ct. 1257 (2016), on April 18, 2016. Even if the statute of limitations began to run upon the decision in *Welch*, it expired on April 18, 2017. Beard's petition, signed on May 10,

2017, is still too late. *Id.*

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the District Circuit found that Beard has failed to show that reasonable jurists would find it "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore denied a certificate of appealability on August 15, 2017. *Id.*

## IV. COGNIZABLE CLAIMS IN A PETITION FOR A WRIT OF HABEAS CORPUS UNDER § 2241

A writ of habeas corpus filed under § 2241 and a motion to vacate, set aside, or correct a sentence filed under 28 U.S.C. § 2255 are "distinct mechanisms for seeking post-conviction relief." *Rosch v. United States*, 89 F.3d 839 (7th Cir. 1996). Section 2255 provides the primary means of collaterally attacking a federal conviction and sentence. See *Suggs v. United States*, 705 F.3d 279 (7th Cir. 2013). Section 2241 is generally used to attack the manner in which a sentence is executed. See*United States v. Stokes*, 726 F.3d 880 (7th Cir. 2013).

A federal prisoner may attack the validity of his conviction in a § 2241 petition if he can meet the requirements of § 2255(e)'s savings clause. See *Hill v. Werlinger*, 695 F.3d 644 (7th Cir. 2012). The prisoner bears the burden of showing that the remedy

7

under § 2255 would be "inadequate or ineffective to test the legality of his detention." See 28 U.S.C. § 2255(e); *Muse v. Daniels*, 815 F.3d 265 (7th Cir. 2016). A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. See *Kholyavskiy v. Achim*, 443 F.3d 946 (7th Cir. 2006). This Court has jurisdiction to hear a habeas corpus petition under 28 U.S.C. § 2241 because it is the closest U. S. District Court to where Beard is incarcerated.

Recently, in *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), the Fourth Circuit concluded that § 2255 is inadequate and ineffective to test the legality of a sentence when: (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect. See *Wheeler*, 886 F.3d at 429.

The Solicitor General, on behalf of the United States, filed a petition for a writ of certiorari challenging the holding in *Wheeler*. In the government's petition, the Solicitor General wrote that "[t]he government recognizes that adherence to the statutory text [of § 2255(h)] may lead to harsh results in some cases[,]" and explained

that "[t]he Department of Justice is working on efforts to introduce legislation that would enable some prisoners to benefit from the later-issued, non-constitutional rules announced by [the Supreme] Court. See Gov't. Petition For a Writ of Certiorari at 22-23, *United States v. Wheeler*, (No. 18-420) (Oct. 3, 2018). On March 18, 2019, the U. S. Supreme Court in an Order denied certiorari in *Wheeler*. As such, the high Court denied the Solicitor General's challenge to *Wheeler* and *Wheeler* is now final.

## IV. GROUNDS

**In Light of *Wooden v. United States*, 141 S. Ct. 1370 (2021), Beard's Prior Conviction for Multiple Counts of Burglary Do Not Qualify Him as an ACCA Offender Requiring Resentencing Without the ACCA Enhancement.**

In order for the ACCA enhancement to apply, the instant offense of conviction must be a violation of 18 U.S.C. § 922(g) and the defendant must have at least three prior convictions for a "violent felony" or "serious drug offense," or both, committed on occasions different from one another. The terms "violent felony" and "serious drug offense" are defined in 18 U.S.C. 924(e)(2). Said definitions are not identical to those contained in the guidelines manual. Further, the time periods for the counting of prior sentences under U.S.S.G. 4A1.2 are not applicable to the determination of whether a defendant is subject to an enhanced sentence under 18 U.S.C. 944(e).

Prior conviction used to enhanced Beard's sentence under the ACCA guidelines:

>    *Multiple Counts of Burglary and Theft.* Beard was convicted of at least 3 Counts of Burglary, which occurred on separate dates. There was no known date of arrest and sentence range. See Doc. 277 at 7.

The ACCA imposes a mandatory minimum term of 15 years in prison for anyone convicted of violating 18 U.S.C. § 922(g), which includes possession of a firearm by a convicted felon, if the defendant has three prior convictions for a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e)(1). Courts have interpreted these statutory terms through the "categorical approach" announced by the Court in *Taylor v. United States*, 495 U.S. 575 (1990). Under the categorical approach, courts look to the statutory elements of an offense, rather than the facts of the defendant's actual conduct, when determining whether a prior conviction meets the statutory definition for enhanced prison term sentences.

> i. <u>District Court Erred in Classifying Beard As An Armed Career Criminal Based on His Conviction for Multiple Counts of Burglary and Theft– Which Should Have Been Counted As A Single Offense</u>

Beard argues that his October 28, 1993, Putnam County conviction for multiple counts of burglary and theft, do not qualify as predicate offenses under the ACCA offender guideline for reasons stated as follows:

Under Section 4A1.2(a), a "prior sentence" is "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for

conduct not part of the instant offense." USSG § 4A1.2(a)(1). The term "prior sentence" "is not directed at the chronology of the conduct, but the chronology of the sentencing." *Mitchell v. United States*, 2016 U.S. Dist. LEXIS 21923 (S.D. Ala. Jan. 8, 2016).

<u>Multiple prior sentences</u>. Prior sentences are always counted separately if the offenses were separated by an intervening arrest (the defendant is arrested for the first offense prior to committing the second offense). Section 4A1.2(a)(2) states that "If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." USSG § 4A1.2(a)(2). For purposes of scoring criminal history points, if prior sentences are counted as a single sentence and concurrent sentences are imposed, the longest sentence of imprisonment dictates the point total. *Id.*

**Note:** Beard was charged with multiple counts of burglary and theft which did NOT have any clear date of an intervening arrest and was just stated as **"this defendant was convicted of at least three counts of burglary, which occurred on separate dates."** See Doc. 277 at 7. The burglaries occurred on separate dates but there was no indication that burglaries were separated by intervening arrest.

Under § 4A1.1(a) or (b), points are added for each prior "sentence of

11

imprisonment." Section 4A1.2(b)(1) defines "sentence of imprisonment" as a sentence of incarceration with reference to the maximum imposed. In commentary, the Commission states that, "to qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such a sentence or if the defendant escaped, must have escaped from a sentence that he or she would have been required to serve." The amount of time counted is the stated maximum of the imposed sentence, irrespective of whether the entire term was served, or whether the term pronounced was a determinate or indeterminate term. "A sentence imposed in the alternative, with a fine or other non-incarcerative disposition as an alternative to a term of imprisonment, does not count as a sentence of imprisonment." A conviction where the imposition of sentence was totally suspended or stayed is counted as a prior sentence under § 4A1.1(c), and thus results in one criminal history point.

The First Circuit ordered similar remands in at least two prior decisions. See *United States v. Ahrendt*, 560 F.3d 69 (1st Cir. 2009); *United States v. Godin*, 522 F.3d 133 (1st Cir. 2008). Godin and Ahrendt involved challenges to the district court's refusal to "group" certain prior offenses for purposes of calculating the Guideline Sentencing Range ("GSR"). When the defendants had been sentenced, the applicable guideline provided that prior offenses were to be counted separately unless they "(A) occurred on the same occasion, (B) were part of a single common scheme or plan, or

(C) were consolidated for trial or sentencing." *Ahrendt*, 560 F.3d at 78 (quoting U.S.S.G. §4A1.2(a)(2) cmt. n.3 (2004)). In both cases, the First Circuit concluded that the district court had correctly applied that guideline provision. While the appeals were pending, however, the Sentencing Commission adopted a non-retroactive amendment under which prior offenses were to be counted as one if "the sentences were imposed on the same day." *Id.* at 79 (quoting USSG §4A1.2(a)(2)) (emphasis omitted). In both *Godin* and *Ahrendt*, the defendants' prior offenses would have been grouped together under this amended provision. We recognized that, because the amendment was non-retroactive, "neither defendant was entitled . . . to a remand because neither could show that an error occurred at sentencing." *Id.* at 80. Notwithstanding the lack of error, we deemed it prudent to remand, *Id.*, to allow the sentencing judge the opportunity "to consider the Commission's current thinking," as reflected in the amendment, *Godin*, 522 F.3d at 136. In a more recent case, *United States v. Rodriguez-Rosado* (1st Cir. 2017), which was decided on April 19, 2017, the First Circuit granted the same judgment - vacated the district court's orders denying Rodriguez-Rosado motion to reduce sentence and remand for further proceedings. Such a remand will allow the court to benefit from the wealth of experience that it has gained adjudicating motions to reduce sentences pursuant to AD 14-426. This process was brand-new when the court ruled on Rodriguez-Rosado's motion. Remand will also foster confidence in the

judicial system by ensuring that Rodriguez-Rosado's motion is handled similarly to those of his ten co-defendants who were potentially eligible for a sentence reduction. The question of whether to grant a sentence reduction "is a matter [Congress] committed to the sentencing court's sound discretion." *United States v. Zayas-Ortiz*, 808 F.3d 520, 523 (1st Cir. 2015) (alteration in original) (citation omitted).

To reiterate, Beard's prior conviction for multiple burglaries and theft, was used as predicate offenses utilizing and activating the "occasions" clause within the 924(e)(1) statute does not satisfy the required requirements under ACCA enhancement. To satisfy the 924(e)(1) statute, Beard must have 3 prior felony convictions of either a violent felony crime or serious drug offense, but Beard has only one predicate offense, to wit: October 28, 1993, Putnam County conviction for multiple counts of burglary and theft. The District Court erred in using a **single** conviction, with multiple counts of burglary and theft (as discussed above and in the next paragraphs).

In light of *Wooden*, Beard's ACCA enhancement can no longer stand due to the fact that his multiple burglaries and theft were not separated by an intervening arrest, in fact, there was no evidence of clear date of his arrest and sentence. Thus, making his prior convictions a single predicate offense.

Beard goes far towards collapsing two separate statutory conditions, recall the ACCA is triggered only if: (1) A 922(g) offender has previously been convicted of 3

or more prior convictions for particular felonies; (2) were committed on occasion different from one another 924(e)(1). Therefore, Beard's sentence cannot be enhanced under the ACCA guideline because he does not have at least 3 prior convictions of either a "violent felony" or "serious drug offense".

Statutory history and purpose confirm this view of the "occasion clause" meaning, as well as the conclusion that Beard is not an ACCA offender according to the 924(e)(1) statute.

In light of *Wooden*, the court now says that the crimes taking place sequentially can sometimes happen on a single occasion. But when it comes to location, one could view Wooden's crimes as having taken place in one or several, and the court chooses the more lenient option, when it comes to timing, one could view his crimes as transpiring in a single episode or as having many potential breaks in action, and again the court chooses the more forgiving course. The origin of the "occasion clause" confirms that multiple crimes may occur on one occasion even if not at the same time.

Beard reading, to be sure, does not render the "occasion clause" wholly superfluous; in select circumstances. A criminal may satisfy the elements of multiple offenses in a single instance. The inquiry that requirement entails, given what "occasions" ordinary means, is more multi-factored in nature. They share a common

scheme or purpose – the more apt they are to compose one occasion.

In the instant case, the inquiry just as readily show to single occasion, because all the factors cut that way. Here, every relevant consideration alleges that Beard committed multiple burglaries and theft on different occasions, even though his criminal activities had no evidence of date that the offenses were committed. Again, in this case, the PSR recited a short summary of Beard's prior convictions, however, the Court failed to confirm with Beard if he affirms or denies the accuracy of the "factual statements."

The multiple burglaries and theft of the same scheme, actuated by the same motive, and accomplished by the same means as in burglaries in *Wooden v. United States*, 595 U.S ___ (No. 20 – 5279) (S.Ct. March 7, 2022).

The ACCA statute should not be construed to reach multiple felony convictions arising out of single criminal episode. Through those references along with the very "title of the act". The Armed Career Criminal Act makes clear that the courts in Beard's case reads the ACCA too broadly. Clarifying the statute in this regard, "insures" that its rigorous sentencing provisions apply only as intended in cases meriting such strict punishment. To the contrary, it enables ACCA to reach multiple felony convictions arising out of two single criminal episodes, so long as the crimes elements are not satisfied at once. To be sure, Beard proposes a way to reconcile its

test with the rejection of the enhancement sentence given in *United States v. Petty*, 798 F.2d 1157 (8th Cir. 1986).

In light of *Wooden*, Beard does not meet the requirements in the 924(e)(1), armed career criminal act– because Beard has only one predicate offense while the 924(e)(1) requires a 15-year minimum penalty for 922(g) offenders with at least 3 prior convictions for specified felonies "committed on occasions" different from one another. As discussed, Beard has only one qualified predicate conviction whereas the 924(e)(1) statute requires at least 3 prior felony convictions.

  ii. <u>Amendment 782 of the United States Sentencing Guidelines</u>

In April of 2014, the U.S. Sentencing Commission voted to lower the federal drug sentencing guidelines by two (2) levels and sent U.S.S.G. Amendment 782 to Congress which became effective on November 1, 2014. The Commission then considered whether to make this relief retroactive to current prisoners who have already been sentenced. On July 18, 2014, the Commission voted for full retroactivity of U.S.S.G. Amendment 782.

*<u>Modification of Sentence pursuant to 18 U.S.C. § 3582(c)(2)</u>*

"In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guidelines provisions that were applied when the defendant was sentenced, and shall leave all other guideline application

decisions unaffected." U.S.S.G. § 1B1.10(b)(1).

After the district court determines what the modified sentence would be, the district court is required to consider any applicable factors under 18 U.S.C. § 3553 in deciding whether a sentence modification is "warranted in whole or in part under the particular circumstances of the case." *Dillon*, 130 S.Ct. at 2692. "Because reference to § 3553 is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into preliminary re-sentencing proceedings." *Id.* Thus, even if Beard qualifies for sentence modification under the first step of the analysis, the decision whether to ultimately grant a modification is left to the sound discretion of the trial court. See *Dillon*, 130 S.Ct. at 2692.

Therefore, Beard is eligible to receive a 2-level reduction under Amendment 782. Because Beard's offense involved more than the 50 grams, but less than 150 grams of methamphetamine (actual), making his Base Offense Level 32 pursuant to § 2D1.1(c)(4).

Without Beard's ACCA enhancement, Beard's Base Offense Level would be 32. Beard received a 4-level increase for his role in the offense; 1-level increase for multi-count adjustment; and a 3-level reduction for acceptance of responsibility, which would result to a Total Offense Level 34. More so, Beard would be eligible for reduction of sentence pursuant to 18 U.S.C. § 3582 and Amendment 782, which would bring his

Total Offense Level to 32, in Criminal History Category III, which would yield an advisory Guideline range of 151 to 188 months' imprisonment, a significantly less harsh guideline range.

Thus, in light of *Wooden,* the Court should consider and resentence Beard.

Finally, Beard asserts that the increase in the calculation of his sentencing range based on the ACCA enhancement, resulted to 198 months' imprisonment. If so, this could be deemed a miscarriage of justice.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Beard' sentence must be vacated for resentencing without the ACCA enhancement and with the application of 782 Amendment. In the alternative, an evidentiary hearing should be held so that Beard may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: September 20, 2022.

_____
DALLAS BEARD

REG. NO.11163-028
FCI MCDOWELL
FEDERAL CORR. INSTITUTION
P.O.BOX 1009
WELCH, WV 24801
Appearing *Pro Se*